UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 4:18-CR-00368 |
| § | |
| BRIAN SWIENCINSKI, § | |
| SCOTT BREIMEISTER, § | |
| CHRISTOPHER INCE, M.D., and § | |
| RONNIE MCADA, JR. § | |

**DEFENDANT CHRISTOPHER INCE, M.D.  MOTION FOR SEVERANCE AND REQUEST FOR HEARING ON SETTING A TRIAL DATE**

TO THE HONORABLE ALFRED H. BENNETT:

1.   **INTRODUCTION**

Defendant Christopher Ince, M.D. submits this motion to sever his case from the remaining defendants in the above-captioned matter. Severance is the only way to "promote a fair determination" of Dr. Ince's guilt or innocence and protect him from ongoing substantial and unjust prejudice. Fed. R. Crim. P. 14(a) and 2.  *see also* ABA Standards for Criminal Justice, Joinder and Severance § 13-3.1(b)(1) (1980).  Severance should be granted for the following reasons:

*First*, the continued joinder with codefendants causes a serious risk that Dr. Ince ability to introduce evidence favorable to him would be compromised resulting in jury verdict based on unreliable and unsupported information about his guilt or innocence. At a second trial, the government would yet again intentionally misrepresent that Dr. Ince was involved in the approval of prescriptions for patients described at trial as "VIP patients" and be precluded from introducing documents to rebut such false representation because doing so would be antagonistic and prejudicial to codefendant Swiencinski.  The adversarial and contentious nature concerns the

admissibility of documents reflecting the source of prescriptions faxed from the Ashton residence building where both Dr. Ince and codefendant Swiencinski resided. During the first trial, the government falsely suggested to the jury that prescriptions for "VIP patients" to receive pain creams and gels were approved by Dr. Ince because they were faxed to the pharmacy from the Ashton. The government knew such representation was false because during their investigation, they obtained email communications between codefendant Swiencinski and pharmacy personnel which confirm Swiencinski sent the faxed prescriptions bearing Dr. Ince purported signature to the pharmacy. The government also obtained email communications between pharmacy personnel wherein they discussed the prescriptions were invalid because they were not faxed from Dr. Ince office. The government presented no evidence to establish that Dr. Ince authorized prescriptions for out of state "VIP patients" referred to in Counts 8, 9 and 10. No testimony was offered regarding patient Colton Alverson referenced by initials C.A. in Count 8. With regard to patient Sofia Koszoru referred to by initials S.K. in Count 9, the government called her mother Kimberly Hohman. Ms. Hohman indicated she had no knowledge of Dr. Ince, never visited his clinic. Ms. Hohman was quite combative throughout her testimony and simply "did not want to be there." Terry Brickman, the individual referred by initials T.B. in Count 10, testified he never met Dr. Ince, nor visited his clinic or requested medications from him. The government called several pharmacy officials who testified regarding the processing of prescriptions; however, no testimony was elicited regarding receiving prescriptions related to out of state "VIP patients" from Dr. Ince office. Testimony from Leo Car and Stacey Mayeur established that physician signatures on prescriptions were routinely forged. The government attempted to fill this gaping hole regarding Dr. Ince authorization of prescriptions by falsely suggesting that prescriptions for out of state "VIP patients" were faxed from his residence. If his case were severed, Dr. Ince could call pharmacy

personnel to testify about the email exchanges with codefendant Swiencinski without prejudice to Swiencinski's case. In addition, it is anticipated that the government will seek again to elicit out of court statements made by Swiencinski which prejudice Dr. Ince and raises an issue under *Bruton v. United States*, 391 U.S. (1968) should Swiencinski elect not to testify. The continued joinder impedes Dr. Ince's ability to obtain a fair trial.

    ***Second***, continued joinder causes substantial and unfair prejudice in that the bulk of the evidence during the first trial focused on the operation of pharmacies, the submission of information by pharmacies to the pharmacy benefit managers ("PBMs") to maintain enrollment as a provider, the submission of claims and relationship between owners of the pharmacy and out of state "VIP patients." Dr. Ince was not involved with innerworkings of the pharmacy, played no role with submission of claims and had no relationship with out of state "VIP patients" referred to by initials in the Indictment. Although Dr. Ince is charged in Count 1 with conspiracy to commit mail fraud, wire fraud and health care fraud and Counts 8, 9, 10 with substantive counts of health care fraud, the government produced absolutely no evidence that Dr. Ince agreed with anyone to make materially false statements or representations regarding claims submitted to PBMs Instead, the government sought to tie Dr. Ince to the conduct of others by misrepresenting his financial relationship with codefendant Swiencinski. The government knowingly sought to introduce through witness William Chan inaccurate and misleading exhibits purporting to show a financial incentive for Dr. Ince to approve patients to receive prescription drugs from the pharmacies. The offered exhibits distorted the actual timeline and true purpose and exchange of money between Dr. Ince and codefendant Swiencinski. The Court denied the admission of most of the misleading exhibits.

3

The government's misrepresentation on this key issue was compounded by the concealment and late disclosure of a report of interview of Leo Carr.  Mr. Carr was called as a witness by the government on November 16, 2022, and his testimony concluded on November 22, 2022. (ME 11/16-17, 21-22/2022).  During his testimony, the government introduced evidence that Carr had reviewed bank information showing codefendant Swiencinski had provided substantial sums of money to Dr. Ince. This testimony was introduced in an attempt to bolster the theory that a kickback relationship existed between codefendant Swiencinski and Dr. Ince. However, Carr had been interviewed by government agents on July 20, 2022, and the following information was stated in the report "Carr noticed all the INCE outgoing wire transfer amounts. Carr went to Breimeister about what he saw. Breimeister stated that Brian has invested in INCE's business and has been loaning him money." (*See* Exh. 1). This report of interview was concealed from Dr. Ince and not produced until December 9, 2022, well after Carr's testimony and only in response to the Court's admonition to the government to redouble efforts to ensure all discovery has been turned over to the defense.  The spillover related to conduct of codefendants payment of money to patients, submission of straw ownership information to PBMs  and submission of claims without a  prescription creates substantial prejudice that a jury would convict Dr. Ince because he had a financial relationship with a codefendant and was a source of referrals to the pharmacy during part of that timeframe despite no evidence linking him to any fraudulent conduct. At a separate trial, this information would not be relevant or admissible against Ince.

***Third***, a severance is necessary to protect Dr. Ince's right under the Speedy Trial Act and avoid unwarranted trial delay due to codefendants Swiencinski and Breimeister's decision to appeal the Court's Order denying Defendants Motion to Dismiss the Superseding Indictment.  On December 13, 2022, this Court *sua sponte* terminated the trial due to what can only be described

as government misconduct designed to prejudice the defendants. Swiencinski and Breimeister should avail themselves of all procedures to address the egregious government behavior, including an appeal, but Dr. Ince should not be unnecessarily held hostage to that decision and precluded from a speedy retrial.

***Fourth***, a severance promotes judicial economy.  A separate trial of Dr. Ince can be tried in three to five days instead a month-long endeavor based on the very limited evidence presented at the first trial that was actually relevant to him.

2. **PROCEDURAL HISTORY**

On November 8, 2022, this case proceeded to trial and continued thereafter until December 13, 2022, when this Court was forced to *sua sponte* declare a mistrial as a result of numerous discovery violations and testimony by a government witnesses that he was instructed to provide perjured testimony regarding his expert report and withhold information regarding his connection with federal agent Grace Hinton. After this Court declared a mistrial, the defense filed motions seeking a hearing to uncover the scope of the misconduct and the nuclear remedy of dismissal with prejudice.  On June 27, 2023, this Court entered an Order Denying Defendants Motion to Dismiss Superseding Indictment on Double Jeopardy Grounds and Outrageous Government Conduct. Codefendants Swiencinski and Breimeister have filed an appeal.  Codefendant Ronnie McAda, Jr. initially filed on appeal, but later moved to dismiss the appeal.  Dr. Ince seeks a severance and a new trial date.

3. **LEGAL STANDARD**

This court may grant a severance even where defendants are properly joined under Rule 8(b) based on prejudicial spillover evidence. See Fed. R. Evid. 14(b); United States v. McRae, 702 F.3d 805, 827-29 (5th Cir. 2012) (granting severance based on prejudicial spillover noting the importance of the jury's ability to compartmentalize the evidence against each defendant); United

5

States v. McCarter, 316 F.3d 536 (5th Cir. 2002) (found district court abused discretion by not severing two of same defendant's crimes for separate trials); United States v. Cortinas, 142 F.3d 242 (5th Cir. 1988) (granting severance based on prejudicial spillover in seven-defendant marijuana distribution case where two defendants were not associated with same gang as other five defendants); United States v. Romanello, 726 F.2d 173, 182 (5th Cir. 1984) (granting severance based on prejudicial spillover); United States v. Pineau, 2002 WL 31780153 (E.D. La. December 9, 2002) (granting severance in conspiracy case when quality and quantity of evidence admitted against the defendant-husband including multiple instances of tax evasion disconnected from defendant-wife severely prejudice defendant-wife at trial).

Severance under Rule 14 is proper if there is "a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Barnes, 979 F.3d 283, 315-16 (5th Cir. 2020). "[A] defendant 'must prove that: (1) the joint trial prejudiced him [or her] to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration.'" Barnes, 979 F.3d at 315-16; United States v. Tarango, 396 F.3d 666, 675 (5th Cir. 2005) (granting severance based on prejudicial spillover in health care fraud trial counseling that "federal system's historic preference for joint trials of individuals who have been indicted together" should not outweigh the "concern that a defendant may be prejudiced"); United States v. Erwin, 793 F.2d 656 (5th Cir. 1986) (granting severance and noting that the court must weigh the prospect of prejudicial spillover against the government's interest in judicial economy).

4. **ARGUMENT**

At trial, the bulk of government exhibits and witnesses focused on the operation of Omni Pharms pharmacies, documents submitted to the PBMs, claims submission data and the recruitment and payment to marketer-patients. With respect to Dr. Ince, the government failed to establish that Dr. Ince authorized or approved prescriptions for out of state "VIP patients." To the contrary, former pharmacy officials provided riveting testimony of a forgery laden business model which involved the submission of claims to BPMs prior to actually receiving prescriptions from physicians. Numerous examples of forged and photocopied prescriptions bearing Dr. Ince signature was established through cross examination of the government's star witnesses. In addition, the out of state "VIP patients" connected to substantive counts in the Indictment never met with Dr. Ince or had any knowledge of him concerning the authorization to receive compounded gels and creams. Although Dr. Ince was not a physician investor in Pharms and testimony elicited from Leo Carr established that co-defendant Swiencinski provided investment capital and loans to Dr. Ince, the government sought to suggest a sinister motive tied to the financial relationship through witness William Chan. As the Court may recall, Mr. Chan's proffered summary charts were inaccurate, misleading and designed to misrepresent the dates and times Dr. Ince received investment funds from Swiencinski. Having had a preview of the government's case against Dr. Ince, it is expected that the government would again attempt to fill the gaping holes and lack of evidence by arguing that Dr. Ince should be held responsible for acts of codefendants because they are seated at the same counsel table. The spill over of conduct attributed to codefendants would deny Dr. Ince a fair trial. The ability to introduce evidence favorable to Dr. Ince on the key issue of authorization of prescriptions bearing his signature would be impeded due to the prejudicial impact of such evidence against codefendant Swiencinski.

7

## CONCLUSION

A severance of Dr. Ince from codefendants is warranted to protect his rights under the Speedy Trial Act, consistent with fundamental fairness and promotes judicial economy.

Respectfully submitted,

*/s/ Samuel Louis*
Samuel Louis
Texas Bar No. 12588040
samuel.louis@hklaw.com
Holland & Knight LLP
811 Main Street, Suite 2500
Houston, Texas 77002
Phone 713.244.6861
713.821.7001

**ATTORNEY FOR CHRISTOPHER INCE, MD**

## CERTIFICATE OF CONFERENCE

Counsel for Defendant Christopher Ince, M.D. has conferred with Government Counsel and the Government is opposed with regard to this Motion.

*/s/ Samuel J. Louis*
**SAMUEL J. LOUIS**

**CERTIFICATE OF SERVICE**

I certify that on October 20, 2023, I electronically transmitted the foregoing document to the Clerk for the U.S. District Court, Southern District of Texas, using the ECF system of the Court.

/s/ *Samuel J. Louis*
Samuel J. Louis