UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § <br> § <br> § |
| v. | §    Criminal No. 18-CR-368 <br> § |
| BRIAN SWIENCINSKI, <br> SCOTT BREIMEISTER, <br> CHRISTOPHER INCE, and <br> RONNIE MCADA, | § <br> § <br> § <br> § <br> § <br> § |
| Defendants. | § |

**THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT CHRISTOPHER INCE'S MOTION FOR SEVERANCE AND REQUEST FOR HEARING ON SETTING A TRIAL DATE**

The United States files this response in opposition to the motion for severance and request for hearing on setting a trial date (hereinafter, the "Motion") filed by Defendant Christopher Ince ("Ince"). *See* Dkt. No. 580. The Motion should be denied. First, the Motion is untimely because the purported grounds for severance were well known to Ince before the Court's deadline for pretrial motions, and Ince failed to request severance prior to that date. Second, the Motion does not overcome the "heavy presumption" in favor of joinder because (1) it fails to clearly articulate Ince's defense, and (2) the defense the Motion hints at is not mutually exclusive or irreconcilable with Defendant Brian Swiencinski's anticipated defenses. Third, the Motion fails to explain why limiting instructions would be insufficient to cure the purported prejudice arising from continued joinder in this case. Fourth, the Motion provides no facts, law, or analysis explaining why

1

severance is "necessary" to protect Ince's rights under the Speedy Trial Act. Accordingly, the Motion should be denied.[1]

I. BACKGROUND

On October 23, 2019, a grand jury returned a superseding indictment charging Ince and his co-defendants with conspiracy to commit mail fraud, wire fraud, and health care fraud, in violation of 18 U.S.C. § 1349. See Dkt. No. 111 at 13–15. Counts 8, 9, and 10 of the Superseding Indictment charged Ince, Defendant Swiencinski, and Defendant Scott Breimeister with an additional charge of health care fraud, in violation of 18 U.S.C. § 1347. See id. at 16–18.

On February 20, 2020, the Court entered a scheduling order that set a deadline of December 4, 2020 for pretrial motions and a new trial date of January 25, 2021. See Dkt. No. 159.

On January 6, 2022, after a series of COVID-19 related continuances requested by the parties, the parties filed a joint motion for a continuance. See Dkt. No. 191.

On September 22, 2021, the Court granted the motion and set a deadline of August 8, 2022 for pretrial motions and a new trial date of September 12, 2022. See Dkt. No. 192.

On August 8, 2022, the deadline for pretrial motions, Defendant Swiencinski filed a motion to sever his case from Defendant Breimeister's and Defendant Vladimir Redko's, arguing their defenses "will be diametrically opposed to Swiencinski's at trial" as "each [may] present a defense at trial that blames Mr. Swiencinski for the conduct charged in the Superseding Indictment." Dkt. No. 233 at 1.

---

[1] The Motion re-iterates several arguments regarding alleged misconduct by the government at Ince's first trial. Ince previously raised many of these allegations (Dkt. No. 464) or adopted those of his co-defendants (Dkt. No. 464 at 1). The government has responded to these allegations (see, e.g., Dkt. Nos. 461, 479), and the Court denied Ince the relief he requested (Dkt. No. 513). The substance of these allegations is not material to the issue of severance. The government, therefore, declines to address the substance of these allegations again in this response.

On August 8, 2022, Defendant Breimeister filed a motion to sever, arguing that "a joint trial would be prejudicial to Breimeister" and the government's anticipated admission of Defendant Swiencinski's statements inculpating him (i.e., Breimeister) "would violate the Sixth Amendment right to confrontation and deprive him of a fair trial."  Dkt. No. 223 at 1–2.

Notably, neither Ince nor Swiencinski moved to sever their case from each other's on or before the deadline for pretrial motions.

On October 3, 2022, the Court denied the motions to sever, finding "[t]he identified conflicts of interest among the Defendants are not sufficient to warrant a severance, nor do they justify disrupting judicial efficiency by severing the case."  Dkt. No. 314 at 1.

On October 27, 2022, the Court re-set trial for November 7, 2022.  Minute Entry (Oct. 27, 2022).

On November 6, 2022, the Court re-set trial for November 8, 2022, with the concurrence of the parties.

On November 8, 2022, trial commenced.  Ince did not file a motion to sever before the start of trial.

On November 10, 2022, Ince's counsel delivered an opening statement.  He argued that there was "no evidence that Dr. Ince signed off on the prescriptions listed on Counts 8, 9 and 10," Tr. at 61 (Nov. 10, 2022), and he also asked jurors to "look at the scripts; you'll see a hodgepodge of ink, fonts, patches, inaccuracies," *id.* at 64.  Ince's counsel also directed jurors to look at the fax headers on prescriptions, apparently previewing a defense that Defendant Swiencienski—a resident of the same building—sent the prescriptions.  *See id.* at 61 ("[L]ook at the fax header, because these are normally transmitted via fax, you'll notice the time and date, but also the origin.  Where were those prescriptions faxed from?").

On December 13, 2022, the Court declared a mistrial.

On April 18, 2023, Defendant Swiencinski filed a notice of appeal of the Court's denial of his motion to dismiss the superseding indictment on the ground that a retrial would violate his rights under the Double Jeopardy Clause.  *See* Dkt. No. 466.

On July 7, 2023, Defendant Scott Breimester filed a notice of appeal of the Court's order of June 27, 2023.  *See* Dkt. No. 515.

On October 20, 2023, Ince filed the Motion.

## II. LAW

### A. Timeliness

Rule 12 of the Federal Rules of Criminal Procedure governs when certain pretrial motions must be made to be considered timely, including motions to "sever[] . . . charges or defendants under Rule 14." Fed. R. Crim. P. R. 12(b)(3)(E).  The court may "set a deadline for the parties to make pretrial motions," including motions to sever.  Fed. R. Crim. P. R. 12(c)(1).  "If the court does not set one, the deadline is the start of the trial."  *Id*.  Motions to sever must be made by the "deadline for the parties to make pretrial motions" to be considered timely if "the basis for the motion is then *reasonably available* and the motion can be determined without a trial on the merits[.]"  Fed. R. Crim. P. 12(b)(3) (emphasis added).

### B. Severance Generally

Severance under Rule 14 is based on the trial court's discretion.  *See* Fed. R. Crim. P. 14 ("If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court *may* order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.") (emphasis added); *see also Zafiro v. United States*, 506 U.S. 534, 538–39 (1993) ("Rule 14 does not require severance even if prejudice is shown;

4

rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").

Notwithstanding the discretion afforded the trial court, "[t]he federal judicial system evinces a preference for joint trials of defendants who are indicted together because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. McRae*, 702 F.3d 806, 821 (5th Cir. 2012) (quoting *Zafiro*, 506 U.S. at 537). "It is the rule, therefore, not the exception, that 'persons indicted together should be tried together, especially in conspiracy cases.'" *Id.* (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993)); *see also United States v. Hill*, 63 F.4th 335, 352 (5th Cir. 2023) ("[T]o promote judicial economy and the interests of justice, there is a strong preference in the federal system for joint trials of defendants indicted together.") (citations and internal quotation marks omitted); *United States v. Mikolajczyk*, 137 F.3d 237, 240 (5th Cir. 1998) ("Joinder is the rule rather than the exception[.]"); *United States v. Featherson*, 949 F.2d 770, 773 (5th Cir. 1991) ("This rule is especially strong when the defendants are charged with committing the same conspiracy.").

"To surmount this heavy presumption [in favor of joinder], a defendant must show that '(1) the joint trial prejudice[s] him to such an extent that the district court [can]not provide adequate protection; and (2) the prejudice outweigh[s] the government's interest in economy of judicial administration.'" *United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018) (quoting *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012)). "Generic allegations of prejudice will not suffice, for 'neither a quantitative disparity in the evidence nor the presence of a spillover effect requires a severance.'" *Id.* (quoting *United States v. Kraut*, 66 F.3d 1420, 1430 (5th Cir. 1995)). Courts have recognized that a "risk of prejudice" *may* be presented by (1) the

admission of evidence that is admissible only against one defendant and (2) the exclusion of "essential exculpatory evidence" resulting from a joint trial. *Zafiro,* 506 U.S. at 539.

### C. Antagonistic Defenses

Antagonistic defenses can be a basis for severance under extreme circumstances, but even "[m]utually antagonistic defenses are not prejudicial *per se*." *United States v. Hankton*, 51 F.4th 578, 608 (5th Cir. 2022) (quoting *Zafiro*, 506 U.S. at 538). Instead, "the defenses must be more than merely antagonistic—they must be antagonistic to the point of being mutually exclusive." *Id.* (citations and internal quotation marks omitted). "[T]he complaining defendant must *at least* demonstrate that the conflict is so irreconcilable that the jury will infer that both defendants are guilty solely due to the conflict." *United States v. Herring*, 602 F.2d 1220, 1225 (5th Cir. 1979) (emphasis added).

### D. Remedies

"[E]ven if prejudice is shown," Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Hankton*, 51 F.4th at 608 (quoting *Zafiro*, 506 U.S. at 538–39); *United States v. Warren*, 728 F. App'x 249, 255 (5th Cir. 2018) (recognizing that, in *Zafiro*, "the Supreme Court refused to adopt a 'bright-line rule' that antagonistic defenses would automatically entitle a defendant to severance").

The Fifth Circuit "generally favor[s] specific instructions over severance." *Ledezma-Cepeda*, 894 F.3d at 690. *See also Zafiro*, 506 U.S. at 539 (recognizing that "limiting instructions . . . often will suffice to cure any risk of prejudice"). "That is because it is generally presumed that juries follow the instructions given to them by the district court and are capable of compartmentalizing the evidence against each defendant." *Id.* (internal citations, brackets, and quotation marks omitted); *see also United States v. Zicree*, 605 F.2d 1381, 1388–89 (5th Cir. 1979)

6

("The test for such prejudice is [w]hether under all the circumstances of the particular case, . . . it is within the capacity of the jurors to follow the court's admonitory instructions and . . . collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements and conduct."). Even when the evidence in a case is "both massive and complex," the court can "explicitly instruct[] the jury to consider each offense separately and each defendant individually." *United States v. Whitfield*, 590 F.3d 325, 356 (5th Cir. 2009) (quoting *United States v. Manzella*, 782 F.2d 533, 540 (5th Cir. 1986)) (internal quotation marks omitted). "Limiting instructions such as these are generally 'sufficient to prevent the threat of prejudice resulting from unsevered trials.'" *Id.* (quoting *United States v. Massey*, 827 F.2d 995, 1005 (5th Cir. 1987))

### III. ARGUMENT

The Court should deny the Motion. First, the Motion is untimely under Rule 12 because the basis for a motion to sever was reasonably available to Ince before the Court's deadline for pretrial motions. Second, the vague defense Ince alludes to is not irreconcilable with Defendant Swiencinski's anticipated defenses and thus fails to overcome the "heavy presumption" favoring joinder in conspiracy cases. Third, even if Ince had established some risk of prejudice resulting from the joinder of his case with his alleged co-conspirators, limiting instructions are the appropriate remedy to cure that prejudice, not severance. Fourth, the Motion fails to establish that any Speedy Trial Act violation has or will occur. Accordingly, the Motion should be denied.

**A. The Motion Is Untimely**

The Motion is untimely because Ince was on notice of the grounds he asserts as the basis for the Motion years prior to trial. Under Rule 12, motions to sever must be brought by the deadline established by the Court, or, if no deadline is set, no later than "before trial" if "the basis for the motion is . . . reasonably available . . . ." Fed. R. Crim. P. 12(b)(3), (c). Here, the basis for Ince's

7

Motion—Defendant Swiencinski or his employees potentially issuing unauthorized prescriptions in Ince's name—was "reasonably available" to Ince before his November 2022 trial as evidenced by his counsel's opening statement alluding to such a defense.

First, even prior to his indictment, Ince was on notice that there were a number of prescriptions written in his name that he claimed he did not authorize. Specifically, in December 2018, Ince participated in a proffer, with his attorney present, wherein Ince denied signing prescriptions for patients that he did not see. *See* Ex. A at 1–2. Ince was asked about specific patients who had received prescriptions from him. *Id.* He denied or could not recall issuing such prescriptions, and his practice did not have patient files for several of these individuals. *See id.* at 1–3. It was thus obvious years ago—well prior to the motion deadline—that there was a discrepancy between prescriptions issued in Ince's name and those Ince acknowledged writing.[2]

Second, the Superseding Indictment, filed more than three years prior to trial, made clear that there was potential adversity between Ince and Defendant Swiencinski. Ince was charged with signing prescriptions at Defendant Swiencinski's direction. The Superseding Indictment alleged "SWIENCINSKI . . . often directed prescribers, including . . . INCE . . . to prescribe and sign off on prescriptions for compounded and other drugs that were often medically unnecessary, not eligible for reimbursement, or not provided." Dkt. No. 111 at 11, ¶ 52. The Superseding Indictment further alleged that "SWIENCINSKI . . . and other[s] . . . signed up themselves, their families, and others to receive compounded and other drugs that were often medically unnecessary. . . . INCE . . . signed or purportedly signed these prescriptions, many times without seeing or

---

[2] During the proffer, Ince also discussed his association with Defendant Swiencinski, the prescriptions Ince wrote for Swiencinski and members of his family, his association with Swiencinski's pharmacies, and his financial relationship with Swiencinski and his pharmacies. *Id.* at 1–3.

8

treating the recipient." *Id.* at 11, ¶ 53. Ince was thus on notice as of October 2019 that the government was alleging he acted in concert with Defendant Swiencinski. Accordingly, three years prior to trial, the potential adversity between the two should have been obvious to Ince if he intended to argue that Swiencinski or his employees issued prescriptions in his name without his permission.

Third, after his indictment, Ince received discovery demonstrating that pharmacies connected to Swiencinski had submitted insurance claims for prescriptions he purportedly issued. As early as January 2020, the government produced insurance claims data to Ince showing which pharmacies sought reimbursement for prescriptions he purportedly wrote. Ince thus had information showing exactly which pharmacies connected to Defendant Swiencinski had filled prescriptions purportedly written by Ince, but with whom Ince admits he had no patient relationship.

The Motion provides no excuse for why Ince failed to move for severance prior to the "deadline for the parties to make pretrial motions" or why "the basis for the motion" was not "reasonably available" prior to that date. Fed. R. Crim. P. 12(b)(3). If Ince did not personally sign prescriptions attributed to him by claims data and did not authorize someone else to do so, as he seems to claim, then the obvious inference was that Defendant Swiencinski or employees at his pharmacies did because they were the beneficiaries of the lucrative insurance claims. Ince had all the information necessary to move to sever his case prior to the start of his first trial, as demonstrated by his counsel's opening statement in November 2022, which hints at the same defense now raised in the Motion. *See* Tr. at 61–64 (Nov. 10, 2022). Ince provides no explanation for why he failed to timely move for severance, and the Motion should therefore be denied.

9

### B. The Motion Fails to Overcome the Heavy Presumption in Favor of Joinder

Alternatively, even if the Court were to consider the merits of the Motion despite its untimeliness, the Motion fails to overcome the heavy presumption in favor of joinder in conspiracy cases.

First, Ince fails to clearly articulate what his defense is and what legally cognizable prejudice would result from joinder, which is essential to meeting his burden. *See United States v. Daniels*, 281 F.3d 168, 178 (5th Cir. 2002) (affirming denial of severance where defendant "offered the court only vague and conclusory assertions that the defense theories were in conflict"). Ince suggests he was not "involved in the approval of prescriptions for patients described at trial as 'VIP patients,'" Mot. at 1, but he never claims that Defendant Swiencinski forged prescriptions in his name or caused prescriptions to be dispensed that Ince did not expressly or impliedly authorize. Because the Motion does not identify the core of Ince's defense, Ince has not provided the Court with a sufficient basis to distinguish this case from the many conspiracy cases in which severance was found to be unwarranted based on a claim of antagonistic defenses.

Second, because the Motion fails to identify the precise nature of Ince's defense, the Motion fails to show Ince's defense will be mutually exclusive or so irreconcilable with Defendant Swiencinski's defense that severance is necessary. This is also a sufficient basis to deny the motion. Under Fifth Circuit precedent, defenses must be "antagonistic to the point of being mutually exclusive or irreconcilable" to warrant relief, such that "the jury, in order to believe the core of one defense, *must necessarily disbelieve* the core of the other." *United States v. Sandoval*, 847 F.2d 179, 183 (5th Cir. 1988) (emphasis added); *United States v. Holcomb,* 797 F.2d 1320, 1324 (5th Cir. 1986) ("The prototypical example [of mutually exclusive defenses] is a trial in which each of two defendants claims innocence, seeking to prove instead that the other committed

the crime."); *cf. United States v. Crawford*, 581 F.2d 489, 491–92 (5th Cir. 1978) (holding that severance should have been granted where an illegal weapon was found in a vehicle and the driver and passenger were tried together for possession of the weapon because each asserted that the other owned the gun). Here, even if Ince specifically "points the finger" at Defendant Swiencinski or his employees regarding the prescriptions to the so-called "VIP patients"—as he suggests he may do, Mot. at 1—that limited assignment of blame is not sufficiently antagonistic to overcome the heavy presumption in favor of joinder. The Fifth Circuit has rejected the argument that a defendant "point[ing] the finger" at a co-conspirator and offering testimony "implicating" him are sufficient to warrant severance. *See United States v. Mitchell*, 988 F.2d 1210 (5th Cir. 1993). Co-defendants often do this in conspiracy cases, and the Fifth Circuit has maintained the heavy presumption in favor of joinder despite of it.

Even assuming the core of Ince's defense is that he did not know Defendant Swiencinski (or his agents) were submitting prescriptions in his name, such a defense is not sufficiently antagonistic to warrant severance. "The test for antagonistic defenses requires that the defenses be irreconcilable or mutually exclusive: the jury, in order to believe one defendant's defense, must necessarily disbelieve the antagonistic defense of another defendant." *United States v. Rocha*, 916 F.2d 219, 231 (5th Cir. 1990). Case law makes clear that the purported adversity resulting from one defendant's claim of lack of involvement or knowledge is not sufficient to warrant severance. *See, e.g.*, *McGraw v. Lynn*, 990 F.2d 625, 625 (5th Cir. Mar. 23, 1993) (per curiam) ("[B]ecause the jury, in order to believe Manchester's defenses of lack of intent and non-involvement, need not have disbelieved McGraw's defense of non-involvement, the co-defendants' defenses were not so irreconcilable to warrant severance."); *United States v. Stotts,* 792 F.2d 1318, 1322 (5th Cir. 1986) (holding that co-defendants' identical defenses of non-involvement were not irreconcilably

antagonistic since "[i]t would be consistent . . . to find that none of the appellants were guilty and that unidentified [people] framed the appellants"); *United States v. Swanson*, 572 F.2d 523, 529 (5th Cir. 1978) (holding that defenses of lack of intent and non-involvement were not irreconcilably antagonistic). Here, for example, the jury could believe Ince did not sign certain prescriptions and also believe that Defendant Swiencinski (1) did not sign them or cause them to be signed or (2) lacked the intent to defraud because, for example, he mistakenly believed they were orally or impliedly authorized by Ince. Ince's defense may not be consistent with Swiencinski's, but what Ince offers is not irreconcilably antagonistic with Defendant Swiencinski's anticipated defenses. Therefore, severance is not appropriate.

### C. Limiting Instructions Are Sufficient to Cure the Alleged Prejudice

The Motion also fails to address why limiting instructions would be insufficient to cure the purported prejudice. Since *Zafiro*, the Fifth Circuit "has consistently affirmed district courts' decisions to remedy any potential prejudice with [limiting] instructions.'" *Warren*, 728 F. App'x at 256 (quoting *United States v. Richards*, 204 F.3d 177, 195 (5th Cir. 2000)). *See also Hankton*, 51 F.4th at 608–09; *United States v. Solis*, 299 F.3d 420, 442 (5th Cir. 2002); *Daniels*, 281 F.3d at 177–78; *United States v. Matthews*, 178 F.3d 295, 298–99 (5th Cir. 1999); *United States v. Stouffer*, 986 F.2d 916, 924–25 (5th Cir. 1993). Ince's assumption that severance is the only remedy available is contrary to the weight of authority in the Fifth Circuit and untenable with the limited information he has provided about his defense.

Even if there were some cognizable prejudice presented by Ince's anticipated defense, limiting instructions like those the "Supreme Court has approved as usually sufficient to cure this character of prejudice" would also be sufficient in this case. *Daniels*, 281 F.3d at 178 (citing

*Zafiro*, 506 U.S. at 541). The following instructions have been recognized by the Supreme Court and Fifth Circuit as sufficient for this purpose:

> (1) that the jury must consider the evidence separately and independently for each defendant and each charge;
>
> (2) that the government's burden was to prove each defendant's guilt beyond a reasonable doubt;
>
> (3) that no inferences must be drawn from a defendant's exercise of the right to silence; and
>
> (4) that statements by the lawyers, including opening and closing arguments, are not evidence.

*Id.* (citing *Zafiro*, 506 U.S. at 541). The Court can further instruct the jury that "it could choose to believe one portion of a witness's testimony while disbelieving another portion" to further counteract any potential prejudice. *See id*. The Court may also choose to provide some or all of these instructions to the jury prior to the delivery of opening statements in addition to providing them immediately before deliberations. The government has no objection to the Court employing this prophylactic measure, even if the Motion fails to demonstrate Ince's entitlement to it.

### D. The Motion Fails to Explain Why the Speedy Trial Act Requires Severance

Ince claims that "a severance is necessary to protect Dr. Ince's right under the Speedy Trial Act and avoid unwarranted delay" due to his co-defendants' appeal, Mot. at 3, but he offers no facts, law, or analysis of the Speedy Trial Act in support of that claim.

"It is the [d]efendant['s] burden to demonstrate that a violation of the [Speedy Trial] Act [has] occurred." *United States v. Neal*, 27 F.3d 1035, 1042 (5th Cir. 1994) (citing 18 U.S.C. § 3162(a)(2)). Under the Speedy Trial Act, following the declaration of a mistrial, "trial shall commence within seventy days from the date the action occasioning the retrial becomes final." 18 U.S.C. § 3161(c). Periods of delay enumerated in 18 U.S.C. § 3161(h) are excluded in computing time limitations. *See* 18 U.S.C. § 3161(e). Allowable justifications for delay include:

13

(1) delay resulting from any interlocutory appeal (*see* 18 U.S.C. § 3161(h)(1)(C));

(2) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion (*see* 18 U.S.C. § 3161(h)(1)(D));

(3) when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted (*see* 18 U.S.C. § 3161(h)(6)); and

(4) when the ends of justice are served by exclusion (*see* 18 U.S.C. § 3161(h)(7)).

The Court previously entered an order excluding the period from December 20, 2022 until May 4, 2023 under the Speedy Trial Act. *See* Dkt. No. 500. The government also moved for an order clarifying that the time from May 4, 2023 through the date on which the Fifth Circuit issues the mandate on Defendant Swiencinski and Defendant Breimeister's interlocutory appeal constitutes excludable delay under the Speedy Trial Act as to their non-appealing co-defendants (i.e., Ince and Defendant Ronnie McAda). *See* Dkt. No. 573. That motion remains pending. Ince does not argue that seventy non-excludable days will elapse prior to his trial. Nor does Ince establish, or even argue, that the Court erred in granting the motions to continue in this matter. In sum, Ince does not establish any violation of the Speedy Trial Act due to the exclusions of time set forth in the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(1)(C) (excluding "delay resulting from any interlocutory appeal"); *id.* § 3161(h)(6) (excluding "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted"). Accordingly, Ince does not carry his burden to establish a violation of the Speedy Trial Act has or will occur in this case.

### E. Ince's Other Bases for Severance Are Baseless

The other bases for severance that Ince posits also do not support severance. Ince's argument that he is somehow "precluded from introducing" certain unidentified evidence because

it "would be antagonistic and prejudicial to Swiencinski" has no basis in law.  Mot. at 1.  The motion never identifies what this evidence is or what "precludes" Ince from introducing it.  *Cf. Tifford v. Wainwright*, 588 F.2d 954, 957 (5th Cir. 1979) (finding prejudice where motion for severance set out the "*specific exculpatory*" evidence that would be available "only if the motion to sever were granted") (emphasis added).  Ince is not precluded from introducing admissible evidence favorable to his defense merely because it has some tendency to inculpate a co-defendant.  *See Mitchell*, 988 F.2d at 1210 (merely "point[ing] the finger" at co-defendant insufficient to warrant severance).  Ince's preference not to present such evidence does not entitle him to severance.

   Ince's arguments concerning his belief in the strength of the government's evidence against him are similarly irrelevant to the question of severance.  A grand jury indicted Ince and his co-defendants for engaging in a conspiracy and jointly committing several crimes.  This case is thus unlike *United States v. McRae*, 702 F.3d 806 (5th Cir. 2012) and *United States v. McCarter*, 316 F.3d 536 (5th Cir. 2002), cited in the Motion at pages 5–6, where the Fifth Circuit considered the strength of the evidence against the defendants on the question of severance.  Neither case involved severance of *co-defendants* charged with conspiracy.  *See McRae*, 702 F.3d at 824 ("Of significance to our consideration of Warren's [severance] argument is that the grand jury charged no conspiracy among the defendants to cover up Warren's role in [the] shooting."); *McCarter*, 316 F.3d at 542 (concluding "the district court abused its discretion in refusing to sever *the counts*" against a defendant) (emphasis added).

   Moreover, although the *strength* of the evidence against Ince is irrelevant to the question of severance, the evidence of Ince's involvement and culpability in the conspiracy with Defendant Swiencinski weighs against severance.  *Cf. Zafiro*, 506 U.S. at 539 (recognizing the "risk of

15

prejudice is heightened" when defendants have "markedly different degrees of culpability"). For example, Defendant Swiencinski sent Ince multiple e-mails with the rates of reimbursement his pharmacies received for Ince's prescriptions. *See, e.g.*, Gov't Trial Ex. 1148; Gov't Trial Ex. 1157. Defendant Swiencinski also directed Ince to "[s]tar[t] writing patches with creams . . . please." Gov't Trial Ex. 1149. Ince responded, "Ok," and later sent lists of patients to Defendant Swiencinski. *See* Gov't Trial Ex. 1150; Gov't Trial Ex. 1152. One of Defendant Swiencinski's employees also e-mailed Ince pre-written prescriptions, requesting that Ince sign off on them. *See, e.g.,* Gov't Trial Ex. 1082. A significant number of Ince's prescriptions were filled at pharmacies owned or controlled by Swiencinski, and those prescriptions generated millions of dollars in insurance claims. Swiencienski also transferred over $1 million to Ince during the same time period. *See, e.g.*, Gov't Trial Ex. 666 (screenshot of wire transfers from Defendant Swiencinski to Ince). Ince was a key player in the charged conspiracy, and his involvement is so "intertwined" with Defendant Swiencinski's that severance would only create a separate "mini trial" involving many of the same witnesses and evidence. *Hankton*, 51 F.4th at 609. Indeed, while Ince claims severance would "promote[] judicial economy," Mot. at 5, the Motion fails to identify any efficiencies that would benefit *the Court* rather than him. *See* Mot. at 5 ("A separate trial of Dr. Ince can be tried in three to five days instead a month-long endeavor . . . .").

## IV.   CONCLUSION

The Motion is untimely, fails to overcome the "heavy presumption" in favor of joinder, and fails to adequately explain why limiting instructions would be insufficient to cure the purported prejudice in this case. The Motion also fails to explain why severance is "necessary" to protect Ince's rights under the Speedy Trial Act. For all of the foregoing reasons, the Motion should be denied.

Respectfully submitted,

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

By:  */s/ Nicholas K. Peone*
Nicholas K. Peone
Kelly M. Warner
Trial Attorneys
Fraud Section, Criminal Division
U.S. Department of Justice
1000 Louisiana, Suite 2300
Houston, Texas 77002
(202) 923-7818
Nicholas.Peone@usdoj.gov

17

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed via CM/ECF on November 10, 2023.

                                              */s/ Nicholas K. Peone*
                                              Nicholas K. Peone
                                              Trial Attorney
                                              Fraud Section, Criminal Division
                                              U.S. Department of Justice
                                              1000 Louisiana, Suite 2300
                                              Houston, Texas 77002